UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CONTINENTAL CASUALTY COMPANY,                    Action No:

                        Plaintiff,          1:23-cv-8102

  -against-
                                                                    **COMPLAINT**

ZIEL FELDMAN, NIR MEIR and JOHN
SHANNON,

                       Defendants.
---------------------------------------------------------------X

Plaintiff Continental Casualty Company ("Continental"), by and through its undersigned counsel, as and for its Complaint against defendants Ziel Feldman ("Feldman"), Nir Meir ("Meir") and John Shannon ("Shannon") (collectively, "Defendants"), alleges:

**NATURE OF THE CASE**

1.    Continental brings this action pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment regarding the parties' rights and obligations in connection with a community association liability insurance policy issued by Continental to Chatsworth Realty Corporation (the "Association"). Defendants herein are also defendants in a civil action captioned *The Board of Directors of Chatsworth Realty Corporation vs. HFZ 344 West 72nd Street LLC, Ziel Feldman, Nir Meir, John Shannon*, et al., Index No. 655551/2021, filed in The Supreme Court of the State of New York, County of New York (the "Board's Lawsuit"). Subject to a reservation of rights, Continental is defending Defendants in the Board's Lawsuit and has paid defense costs on behalf of Defendants. Continental seeks a declaration that it has no duty to defend or indemnify Defendants in connection with the Board's Lawsuit.

## THE PARTIES

2. Continental is a corporation organized under the laws of Illinois, with its principal place of business in Illinois. Continental has legally transacted insurance business in the State of New York and within the geographical jurisdiction of the United States District for the Southern District of New York.

3. In the Board's Lawsuit, Defendant Ziel Feldman admitted the allegation in paragraph 11 of the Board's complaint that "Defendant Ziel Feldman is an individual who, upon information and belief, maintains a residence at 11 East 68th Street, New York, New York."

4. Based on information and belief, Defendant Meir is an individual and maintains a residence in New York, New York.

5. Based on information and belief, Defendant Shannon is an individual and maintains a residence in New York, New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1). There is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.

7. This Court has personal jurisdiction over each and every Defendant in this matter.

8. Venue is proper pursuant to 28 U.S.C. §1391(a)(2) because a substantial portion of the events giving rise to the claims at issue in this action occurred in this District.

9. An actual controversy within the meaning of 28 U.S.C. §2201 exists between the parties in that Continental contends that it has no duty to defend or indemnify Defendants in connection with the Board's Lawsuit and Defendants contend otherwise.

## FACTUAL ALLEGATIONS

A.     **THE BOARD'S LAWSUIT**

10. On or about December 15, 2021, the Board's Lawsuit was filed. A true and correct copy of the Board's Lawsuit is attached as **Exhibit A** hereto.

11. Based on information and belief, Defendants received notice of the Board's Lawsuit sometime after it was filed on or about December 15, 2021.

12. Defendants' insurance broker notified Continental on or about January 22, 2022 of the Board's Lawsuit.

13. The Lawsuit alleges *inter alia* that it "is an action by a residential cooperative corporation to hold its sponsor liable for the grave breaches of fiduciary duty through which it treated the corporation as its personal piggybank—to the tune of well over $10 million." **Ex. A** at ¶1.

14. The Lawsuit alleges *inter alia* that "Chatsworth Realty Corporation ("Corporation") is a domestic corporation, formed to own and operate the residential cooperative apartment building at 340-344 West 72nd Street, New York, New York ("Building")." **Ex. A** at ¶9.

15. The Lawsuit alleges *inter alia* that the Association's "board of directors ("Board") is charged, under the Corporation's By-Laws ("By-Laws"), with managing the Corporation's affairs." **Ex. A** at ¶10.

16. The Lawsuit alleges *inter alia* that HFZ 344 West 72nd Street LLC ("HFZ") is the "sponsor/developer" of the Association. **Ex. A** at ¶11.

17. In his answer to the complaint in the Board's Lawsuit, Defendant Meir admitted the allegations in paragraph 10 of the complaint that "Defendant HFZ (or "Sponsor") is a Delaware

3

limited liability company authorized to do business in New York. It is the Corporation's sponsor/developer."

18.   The Lawsuit alleges *inter alia* that Defendant Feldman "was a member of the Board from its inception until around May 2, 2021." **Ex. A** at ¶13.

19.   The Lawsuit alleges *inter alia* that Defendant Feldman "was an officer of the Corporation from its inception until around May 2, 2021." **Ex. A** at ¶14.

20.   The Lawsuit alleges *inter alia* that Defendant Feldman "was and is a principal of the Sponsor." **Ex. A** at ¶15.

21.   The Lawsuit alleges *inter alia* that Defendant "Meir was a Sponsor-appointed Board member from the Corporation's inception until around May 2, 2021." **Ex. A** at ¶17.

22.   The Lawsuit alleges *inter alia* that Defendant Meir was a principal of the Sponsor. **Ex. A** at ¶81.

23.   The Lawsuit alleges *inter alia* that Defendant "Shannon was a Sponsor-appointed Board member from the Corporation's inception until around May 2, 2021." **Ex. A** at ¶18.

24.   The Lawsuit alleges *inter alia* that Defendant Shannon was a principal of the Sponsor. **Ex. A** at ¶81.

25.   The Lawsuit alleges *inter alia* that "Feldman, Meir, and Shannon directly and personally participated in the conduct and transactions described below, and they caused the Sponsor to act as alleged herein." **Ex. A** at ¶19.

26.   The Lawsuit alleges *inter alia* that "Defendants (HFZ and its principals) breached their fiduciary duties to the corporation's shareholders by, among many other things: (i) entering into a sham agreement with one of HFZ's lenders, improperly agreeing to subordinate Defendants' obligations to the corporation to that of the lender; (ii) depleting the corporation's reserve fund by

defalcating and misusing those funds for Defendants' own selfish purposes; and (iii) refusing to make critical repairs to the corporation's building, failing to maintain the corporation's books-and-records, and issuing to shareholders falsified and/or erroneous tax documents." **Ex. A** at ¶5.

27.  The Lawsuit alleges *inter alia* that "As a result of their actions while they were in control of the corporation and its building—Defendants have caused Plaintiff not less than $10 million of damage (and likely much more)." **Ex. A** at ¶6.

28.  The Lawsuit alleges *inter alia* that "The Sponsor maintained control of and a grip over the Board for five years from the Conversion Date, until on or about May 2, 2021 ("Control Period")." **Ex. A** at ¶23.

29.  The Lawsuit alleges *inter alia* that "Knowing the unchecked power they wielded over the Corporation, and unbeknownst to the Corporation's shareholders at the time, Defendants exploited the Control Period to loot and mismanage the Corporation to satisfy their own rapacious aims through a sustained campaign of fraud and financial treachery." **Ex. A** at ¶24.

30.  The Lawsuit alleges *inter alia* that "throughout the Control Period, Defendants breached those duties and used and abused their control over the Board to further their own interests at the great expense and to the grave detriment of the Corporation and its shareholders." **Ex. A** at ¶51.

31.  The Lawsuit alleges *inter alia* that "Among many other things, as a direct and proximate result of Defendants' misconduct and malfeasance, the Corporation is now left with: (i) a depleted Reserve Fund; (ii) an unfinished Building, which will cost meaningful sums to complete; (iii) mechanics' liens of nearly three million dollars; (iv) immense reputational damages with contractors and subcontractors, making it difficult to engage them to bid for or perform work for the Corporation; (v) nearly one million dollars' worth of maintenance arrears from shareholders

whose maintenance was allegedly and inappropriately "forgiven"; and (vi) several millions of dollars' worth of Defendants' maintenance and real estate tax arrears." **Ex. A** at ¶52.

32. The Lawsuit asserts a cause of action against the Sponsor based on *inter alia* "misappropriate[ing] the Reserve Fund for improvements to its own units, without knowing, voluntary, and conscious authorization, permission, or right." **Ex. A** at ¶56.

33. The Lawsuit asserts a cause of action against the Sponsor based on the Sponsor "negligently performing construction on the Building by, among other things, failing to complete the elements of the Building's construction set forth in the Sterling Report, including: (a) the installation of building-wide MEPS systems; (b) common space interior fit-out work; (c) exterior façade work; (d) gas installation in apartment units; and (e) obtaining permit closures and signoffs for the Building." **Ex. A** at ¶64.

34. The Lawsuit asserts a cause of action against all Defendants alleging that "By entering into the Sham Recognition Agreement, Defendants facilitated the unauthorized subordination of the Sponsor's obligations to pay its maintenance and real estate taxes (for the Corporation) to its obligations to Starwood." **Ex. A** at ¶79.

35. The Lawsuit alleges that "As principals of the Sponsor, Feldman, Meir, and Shannon individually and collectively benefitted from the Sponsor's ownership of and title to certain units in the Building without paying the Sponsor maintenance or real estate taxes, and they have been unjustly enriched in an amount to be determined at trial, but in no event less than $10,000,000.00 plus interest." **Ex. A** at ¶81.

B.     **THE CONTINENTAL POLICY**

36. Continental issued Community Association Policy No. 618674587 (the "Policy") to the Association for the Policy Period April 29, 2021 to April 29, 2022. A true and correct copy

of the Policy is attached hereto as **Exhibit B**.

37. The Policy includes a Limit of Liability of $1,000,000 for all **Liability Loss** paid on behalf of all **Named Entity Insureds** for all **Claims** first made during the **Policy Period**.[1] **Ex. B** at 8.

38. The Policy's Insuring Agreement states:

> The Insurer shall pay all **Loss** resulting from any **Claim** first made against any **Named Entity**, **Subsidiary**, **Insured Person** or **Property Manager** during the **Policy Period** … for a **Wrongful Act** committed, attempted, or allegedly committed or attempted, by such **Named Entity Insured** before or during the **Policy Period**.

**Ex. B** at 24.

39. The Policy defines **Insured Persons** to mean:

> all past, present or future duly elected or appointed directors, officers, trustees, employees (including full time, part time, seasonal, temporary, leased or loaned employees), or committee members of **Named Entity** or any **Subsidiary**; volunteers acting on behalf of and at the specific direction of the **Named Entity** or any **Subsidiary**; or **Property Manager Employees**.

**Ex. B** at 24.

40. The Policy defines **Loss** to mean:

> damages, settlements, judgments (including any award of pre-judgment) and **Defense Costs** for which the **Named Entity Insureds** are legally obligated to pay on account of a covered **Claim**. **Loss** shall not include:
>
> a. criminal or civil fines or penalties imposed by law;
>
> b. taxes;
>
> c. any amounts for which there is no legal recourse against the **Named Entity Insureds**; or
>
> d. matters which are uninsurable under the law pursuant to which this Policy is construed. . . .

**Ex. B** at 24.

---

[1] Terms in **bold** are defined terms in the Policy.

41. The Policy defines **Wrongful Act** to mean:

    any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by:

    a. the **Insured Persons** in their capacity as such, or any matter claimed against the **Insured Person** solely by reason of serving in such capacity;

    b. any **Named Entity** or **Subsidiary**; or

    c. a **Property Manager**, but solely in the capacity as a **Property Manager** performing **Property Manager Services**, . . . .

**Ex. B** at 25.

42. Endorsement No. 15 to the Policy states:

    The Insurer has the right and duty to defend all **Liability Claims**, even if the allegations are groundless, false or fraudulent. The Insurer shall have the right to appoint counsel and to make such investigation and defense of a **Liability Claim** as it deems necessary. Subject to paragraph 2. below, the Insurer's obligation to defend any **Liability Claim** or pay any **Liability Loss** shall be completely fulfilled and extinguished if the limit of liability has been exhausted by payment of **Liability Loss**.

**Ex. B** at 45.

43. The Policy also states:

    1. Exclusions Applicable to all **Loss**

        The Insurer shall not be liable to pay any **Loss** in connection with any **Claim**:

        1. based upon, directly or indirectly arising out of, or in any way involving any:

            (1) * * *

            (2) **Construction Defect**;

            (3) damage to tangible property; loss of use or view, or destruction or deterioration of any tangible property; or failure to supervise, repair or maintain tangible property.

            * * *

            e. for any **Wrongful Act** by **Insured Persons** in the discharge of their duties in their capacities, or solely by reason of their status, as directors, officers, trustees, regents, governors or employees of any entity other than **Named Entity**, any

8

        **Subsidiary** or the **Property Manager**, even if directed or requested by **Named Entity**, any **Subsidiary** or the **Property Manager** to serve as directors, officers, trustees, regents, governors or employees of such other entity; provided, however, that this exclusion does not apply to Insured Persons representing the Named Entity on other community association boards, joint councils, master associations or sub associations, provided that such entities are not-for-profit;

    f.   where it is established in such **Claim** that such **Named Entity Insured** gained any profit, remuneration or pecuniary advantage to which they were not legally entitled. For purposes of determining the applicability of this exclusion, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person**, . . .;

    g.   where it is established in such **Claim** that such **Named Entity Insured** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage. For purposes of determining the applicability of this exclusion, the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person**, . . .;

        \*\*\*

    n.   made against any of the **Insureds** in their capacity as sponsors, builders or developers of the **Named Entity**, or based upon, directly or indirectly arising out of, or in any way involving any actual or alleged misconduct of a sponsor, builder or developer of the **Named Entity**, including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development.

**Ex. B** at 26-27.

    44.    Endorsement No. 5 to the Policy replaced Exclusion e. to state that "The Insurer shall not be liable to pay any **Loss** in connection with any **Claim**:

        for any **Wrongful Act** by **Insured Persons** in the discharge of their duties in their capacities, or solely by reason of their status, as directors, officers, trustees, regents, governors or employees of any entity other than **Named Entity**, any **Subsidiary** or the **Property Manager**, even if directed or requested by **Named Entity**, any **Subsidiary** or the **Property Manager** to serve as directors, officers, trustees, regents, governors or employees of such other entity; provided, however, that this exclusion does not apply to Insured Persons representing the Named Entity on other

>community association boards, joint councils, master associations or sub associations, provided that such entities are not-for-profit; ….

**Ex. B** at 34.

45. The Policy's "Other Insurance" clause states:

>If any Loss resulting from any Claim is insured under any other policies, this Policy shall apply only to the extent the Loss exceeds the amount paid under such other valid and collectible insurance whether such other valid and collectible insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other valid and collectible insurance is written only as specific excess insurance over this Policy.

**Ex. B** at 19.

## FIRST CAUSE OF ACTION

### For Declaratory Judgment That There is No Coverage Under The Policy

46. Continental incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

47. An actual and justiciable controversy exists over the rights and obligations of the parties under the Policy issued to Chatsworth.

48. Continental has no obligation to defend Defendants or pay the costs of defending Defendants in the Board's Lawsuit and has no obligation to pay any settlement or judgment on Defendants' behalf in connection with the Board's Lawsuit on the grounds that:

   a. The Board's Lawsuit does not satisfy every element of the Policy's **Insuring Agreement**.

   b. The Board's Lawsuit seeks relief that does not constitute **Loss** as defined by the Policy.

   c. The alleged misconduct does not constitute a **Wrongful Act** by an **Insured Person** as those terms are defined by the Policy.

   d. Exclusion 1.n. bars coverage.

10

  e. Exclusion 1.e., as amended by Endorsement No. 5, bars coverage.

  f. Exclusion 1.a.2. bars coverage.

  g. Exclusion 1.f. bars coverage.

  h. Exclusion 1.g. bars coverage.

  i. The Policy's "Other Insurance" clause may limit any coverage.

49. Pursuant to 28 U.S.C. §2201, Continental is entitled to a declaration that it has no duty to defend Feldman, Meir or Shannon and has no duty to pay attorneys' fees and costs to defend any of them in the Board's Lawsuit.

50. Pursuant to 28 U.S.C. §2201, Continental also is entitled to a declaration that it has no duty to indemnify Feldman, Meir or Shannon for any settlement of or judgment in the Board's Lawsuit.

## SECOND CAUSE OF ACTION

### For Recoupment of Defense Costs Paid Under Reservation of Rights

51. Continental incorporates by reference the allegations set forth in the foregoing paragraphs of this Complaint.

52. Subject to a reservation of rights including, but not limited to, the right to seek a judicial determination of no coverage and to withdraw from the defense and recover amounts paid in connection with this matter, Continental is defending Defendants in the Board's Lawsuit and has paid defense costs on behalf of Defendants.

53. Defendants Feldman, Meir and Shannon were not entitled to a defense by Continental under the Policy or to have their defense costs paid by Continental.

54. Accordingly, Continental is entitled to recoupment or reimbursement from Defendants of all defense costs (attorneys' fees and expenses) paid by Continental in connection

with defending Defendants in the Board's Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, Continental demands judgment in its favor and demands a declaration that:

i. the Policy does not cover any claim asserted and/or relief sought in the Board's Lawsuit;

ii. Continental has no duty to defend and no duty to pay defense costs incurred by Feldman, Meir or Shannon;

iii. Continental has no duty to pay any settlement of or judgment in the Board's Lawsuit;

iv. Continental is entitled to recoupment and/or reimbursement of all attorneys' fees and expenses paid by Continental in connection with defense of Defendants in the Board's Lawsuit; and

v. Continental is entitled to fees, interest, costs and such other relief as the Court deems appropriate.

Dated: New York, New York
September 12, 2023

CORPORATE LITIGATION

By: */s/ David R. Shyer*

David R. Shyer, Esq. (DS-6506)
CORPORATE LITIGATION
CNA
125 Broad Street, 7th Floor
New York, NY 10004
P (212) 440-2746
David.shyer@cna.com

Of Counsel
Karen Ventrell, Esq.
CORPORATE LITIGATION
CNA
2020 K Street, N.W. Suite 750
Washington, DC 20006-1915
P (202) 416-4762
karen.ventrell@cna.com

*Counsel for Plaintiff Continental Casualty Company*